JOHN F. MATTHEWS

v.

AUGUSTUS P. FULLER ET AL.

SALE—WARRANTY—RESCISSION OF CONTRACT.—Where a sale of goods is made with an agreement that the vendee may return the goods if not as represented, an offer to return the same made within a reasonable time, on breach of the warranty, is sufficient to relieve the vendee from liability for the price, though the actual return may be delayed for some days, such offer to return being met by the vendor with a refusal to receive the goods.

APPEAL from the County Court of Cook county; the Hon.

MASON B. LOOMIS, Judge, presiding. Opinion filed May 4, 1881.

Mr. GEORGE SAWIN, for appellant; upon the right to return the goods, cited Woodford v. M'Clenahan, 4 Gilm. 85; Cochran v. Chitwood, 59 Ill. 53; T. W. & W. R. R. Co. v. Elliott, 76 Ill. 67; 1 Addison on Contracts, 118.

Mr. CHARLES A. GREGORY, for appellees, cited Doane v. Dunham, 79 Ill. 131.

McALLISTER, P. J : This was assumpsit, brought in the County Court of Cook county, by Fuller & Co. against Matthews, to recover for divers quantities of varnishes alleged to have been sold and delivered by the former to the latter, in June, 1878. There was a trial by the court and a jury, resulting in a verdict for plaintiffs in the sum of three hundred and sixty-three dollars and seventy-five cents. The defendant made a motion for a new trial, which the court overruled, and gave judgment on the verdict. The evidence being preserved by bill of exceptions, the defendant brings the case here on appeal.

At the argument, we were inclined to be against the position taken by appellant's counsel; but a careful examination of the evidence, as presented by the bill of exceptions, has brought us to a different conclusion. The plaintiffs below, Fuller & Co., were manufacturers of varnishes in Portland, Maine. The defendant, Matthew was engaged in the business of upholsterers' supplies, and bedding, and wholly unacquainted with varnishes, not being in the use of or a dealer in them. He resided and had his place of business in the City of Chicago. The plaintiffs had an agent in the latter place for their varnishes, of the name of Goodhue, who in the early part of the spring of 1878 persuaded Matthews to undertake dealing in the varnishes of plaintiffs, in connection with his other business. Defendant gave Goodhue a verbal order for a small lot, which he forwarded to his principals. The order was filled, the goods were received by defendant and paid for, and by him sold out to his customers

without any knowledge as to their quality. About June 1, 1878, Goodhue called on defendant again to solicit orders for varnish of his principals.    It appears by wholly uncontradicted testimony that Matthews told Goodhue that he, Matthews, was unacquainted with the business; that he wished to have a first class article; that he didn't expect to sell it in large amounts, but to sell it to the general trade throughout the country, to the carriage men and furniture men; that he did'nt wish to sell anything that would interfere with his business, as he had a good trade in every other line of business; that Goodhue said these goods were made of the best gums and spirits of turpentine. He said it would be the best quality of varnish. Defendant said: "I shall have to leave it with you entirely to give me a good article, and at lowest cash price in the market." Goodhue agreed to do so. He said they were the best manufactured in the eastern country; that their varnish stood very high, and he would guarantee them in every respect, and that if they were not satisfactory in every respect they would be subject to Matthews returning them. On those conditions the order was given.

Now, this testimony, standing wholly uncontradicted, must be regarded as fixing the terms and conditions upon which the order was given. The order which Goodhue wrote out, comprised eight different kinds of varnishes. It was sent to plaintiffs on the 1st of June, 1878, and received by them on the 4th of same month. But the defendant having been soliciting orders from his customers, which he expected to fill from the lot so ordered, waited until June 25th without receiving any communication from plaintiffs; then wrote them canceling the order. The plaintiffs claim that before then and on the 17th of June, they had shipped the goods, and refused to cancel the order. The goods arrived in Chicago July 2, 1878, but no bill of lading came. On the same day Matthews wrote plaintiffs that orders on him for varnish had been countermanded; that plaintiffs had been written to and telegraphed to but could get no word, and that he had concluded they were not going to fill the order, and that he should have nothing to do

with the goods—should not remove them but hold them subject
to plaintiff's orders.  It appears that Matthews afterwards, and
August 12th, changed his mind, and concluded to take the goods
from the warehouse to his store; but there is nothing in the
evidence tending to show they were received by him upon any
conditions other than those under which the order for them
was given as above stated.  But a correspondence was kept up
between the parties in respect to the goods, down to the 28th
of August, 1878.  There was a controversy about the plaintiffs'
delay in communicating with defendant, or sending the goods
This delay, defendant thought, absolved him from the contract;
plaintiffs claimed that because the defendant did not specify
in his order the time, the delay was immaterial.  There was
a further controversy about over-charges, the defendant claim-
ing that on some of the kinds of varnish plaintiff's prices
exceeded those agreed on between him and Goodhue.  There
was delay in getting the bill of lading, and alleged mistakes
in the bill of the goods as made out by plaintiffs.  All these
things, we think, bear upon the question whether Matthews
exercised his option to return the goods, if not satisfactory to
him in all respects, within a reasonable time, that being the
rule of law under the contract in question.  Benjamin on
Sales, 483, *et seq.*

We are unable to perceive anything in the correspondence,
which would justify the conclusion that defendant was captious
or unreasonable in the several positions he took or claims made
in this behalf, which resulted in the delay of subjecting these
varnishes to examination as to their character and quality.
That delay extended to August 28, 1878, soon after which they
were examined and tested; and September 4th he notified plain-
tiffs by letter, then mailed at Chicago, that they were not
satisfactory; that they had been tried and proved to be of in-
ferior quality, and that he held them subject to their order.
September 7th the plaintiffs wrote in reply, in substance, that
they could and should maintain their claim against defendant
for the price of the goods; and if he declined to pay they should
place it in the hands of their attorney for collection.  In such
a case, Kent says: " An offer to return the chattel in a reason-

able time, on breach of warranty, is equivalent in its effect upon the remedy to an offer accepted by the seller, and the contract is rescinded, and the vendee can sue for the purchase money in case it has been paid." 2 Kent's Com., p. 480.

It was shown by the testimony of two disinterested witnesses that the varnish in question was of a bad and inferior quality; that it was composed of benzine instead of turpentine, and was in reality worthless. It was not, therefore, as warranted by Goodhue and by the terms of the contract, as shown by wholly uncontradicted testimony. Matthews had the privilege of returning it, if not in all respects satisfactory to him. This right, it is true, was to be exercised in a reasonable time, in view of all the attending circumstances. If the notice and offer of return made by him September 4th was made in a reasonable time, under all the circumstances, then, considering appellees' reply to that offer, indicating that they should in no event take the goods back, the actual return, September 18th, becomes entirely immaterial so far as the question is concerned, whether a termination had been put to the contract. There was no dispute as to the facts bearing upon the question whether the offer to return, made September 4th, was within a reasonable time. The jury presumably found that it was not. But under the peculiar circumstances above adverted to, we are of opinion the jury were wrong. In the absence of any instructions from the court on the point, they probably took the 18th when the actual return was made, instead of the 4th of September, when the notice was given as the period to be passed upon.

The plaintiffs were allowed within a few dollars the full price charged for the goods, shown by disinterested testimony to have been worthless. The verdict is manifestly unjust, and the case is very much like that of Howard v. Hoey, 23 Wend. 350, tried before a referee with a similar result, and the Supreme Court ordered a new trial. The court below should have granted a new trial; and for the error in refusing to do so the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.